324-0358, Pekin Insurance Co. and Progressive Northern Insurance Co. v. Benjamin Graunke, Appellant Mr. Esp, you may proceed. Thank you. May it please the Court, Councils, Good morning, Your Honors. My name is Jay Gasp and I represent the Appellant, Benjamin Graunke. We respectfully request that this Court reverse the Trial Court's granting of summary judgment in favor of both Pekin Insurance Co. and Progressive Northern Insurance Co. The Circuit Court erred in four principal ways. First, it considered an inadmissible testimony from Milo Soko that is barred under the Illinois Dead Man's Act. Second, it improperly resolved a genuine issue of material fact as to whether Electra Romulotis had permission to drive a Lexus. Three, it failed to account for clear evidence in the record creating an issue of fact as to whether Electra was a resident relative under the Progressive policy. And lastly, it entered judgment despite Progressive never naming or serving a necessary party, Lawrence Radzewski, the named insured. This appeal centers around Pekin and Progressive's claims that Electra is excluded from the policy based on the respective omnibus clauses in the policies. An omnibus clause is a provision that extends liability to coverage to individuals who use the vehicle with his or her permission. In order for Pekin and Progressive to meet their burden that the omnibus exclusion applies, the applicability of that clause must be free and clear from doubt. As will be discussed, the Trial Court erred in granting of summary judgment in Pekin and Progressive's favor for the four following reasons. The first reason that summary judgment was not proper is that the self-serving testimony presented by Milo Sopko that he explicitly told Electra that she was not to drive the vehicle is barred by the Dead Man's Act. I first wanted to address Progressive's argument that Groenke waived this argument because he did not argue it in the Trial Court. A review of the record clearly shows that Groenke raised this issue in their response to Progressive's motion for summary judgment. The purpose of the Dead Man's Act is to protect individuals from fraudulent claims and to- Did you elaborate on the clarity? Sorry? Did you elaborate on that clarity? On Groenke raising that argument? Yeah, in the Trial Court. Yeah, clarity. So, in our response to Pekin's motion for summary judgment, we raised the issue of the Dead Man's Act in support of our motion, or our response to their motion. And in our response to Progressive's motion, we raised the issue that they adopted Pekin's argument in response to our appellate brief. So, it was clearly addressed in both our arguments in front of the court as well as in our motions. Thank you. The purpose of the Dead Man's Act is to protect individuals from fraudulent claims and to equalize the position of parties with respect to giving testimony. The Dead Man's Act is not a to every statement made but just those which the deceased could have refuted. Here, the testimony at issue is a conversation between Soko and Elektra, who is now deceased. Milos testified in his deposition that he explicitly told Elektra that she was not to drive the vehicle. Because Elektra is not here to dispute this testimony, the Act applies, thus barring the statement. The Act applies because the general principles of insurance law, as cited in Groenke's brief, provide that Groenke stands in the shoes of Elektra. Additionally, Pekin stands in the shoes of Soko. Stated another way, Groenke is Elektra and Pekin is Soko for the purposes of this declaratory judgment action. Both Groenke, seeking enforcement of a judgment, and Pekin have an interest in this matter. Pekin's interest is through the insurance policy issued to Soko and his business and whether Pekin has any monetary obligations for the underlying judgment. Thus, because Groenke stands in the shoes of Elektra and Pekin stands in the shoes of Soko, the Dead Man's Act bars Soko's testimony that he explicitly told Elektra that she was not to drive the vehicle. How does Milos or Mitos, depending whether you're talking about the individual or the insurance or the corporation, stand in the shoes or how does the insurer stand in his insurer's shoes or the corporation's shoes? So, I mean... I know you cited Plough. Yeah, so it's essentially that Milos is Pekin for this, it's his coverage. Pekin is seeking a judgment based on the coverage that Milos paid the premiums for and I think it's just as simple as that. Are you alleging with Plough on that $250 direct monetary issue, the pecuniary issue, is that what you're talking about? That concept of whether he's a representative as defined by the act? Where are you going on that? So, I just think that because it is a policy from Milos, you know, the way insurance law works, he's going to either have to pay a deductible if they end up paying or his premiums are going to go up eventually if he has to buy it. So, they can't say that Pekin or Milos doesn't have an interest in this action. How is Milos or the corporation that has a direct financial interest? I think it set forth in the briefs that in the underlying lawsuit, he got out on counts two and three on motion for summary judgment. So, he has no liability as a result of the underlying lawsuit. How is he directly interested as a witness according to the act? I don't know the answer to that question. The policy is still at issue, obviously, because Pekin filed the declaratory judgment action. So, I would, again, just say that Milos would stand in the shoes or, excuse me, Pekin stands in the shoes based on that. Okay. Thank you. Okay. So, the second reason why the trial court aided in granting summary judgment and Pekin and Progressive's favor is that there's a genuine issue of material fact as to whether Elector had expressed permission or implied permission to drive a vehicle. Again, I first have to point out that Progressive argued that Gronky waived this argument, looking to the record on appeal as discussed before. It's clear that Gronky raised this argument in their motions and with the oral argument in front of the trial court. Starting with expressed permission, even if Milos' testimony were admissible, summary judgment was still improper because the record contains ample conflicting evidence on the central issue of permission. Let's be clear. It was Pekin and Progressive's burden to prove that Elector was not a permissive user and they did not carry it. Multiple witnesses directly contradict Milos. Athena testified that Milos brought the car for you guys, meaning both daughters. He did not limit its use to her. Athena also testified that she never heard Milos say that Elector could not use the vehicle. Michelle, Elector's mother, testified that the car was offered for either daughter and that Milos never told anyone Elector couldn't drive. Ms. Milton confirmed Milos never said Elector was restricted and in her words, if Milos says you can drive his car, anyone can. Even Detective Allen, whose testimony is hearsay, admitted that Milos never said Elector was prohibited from driving. After previously testifying that Michelle said that Elector was not supposed to drive the vehicle, Allen later corrected himself, saying Michelle was merely surprised not that Elector lacked permission. Detective Allen's testimony again creates a genuine issue of fact. These factual disputes go to the heart of the coverage issue. This is precisely what courts mean when they say summary judgment should be denied unless the policy exclusion is applicable clearly and free from doubt. The insurers are focused on the claim that Milos told Elector not to drive, but when four different witnesses dispute that account, there is a minimum a fact question, especially considering the testimony of Jacqueline Milton and Gronke, who Milos testified were present for the conversation and testified that Milos did not say Elector was forbidden from driving the vehicle. And notably, no one ever testified that Milos told Gronke or anyone else that Elector was restricted. On to implied permission. The record of evidence presents favors a holding that Elector had implied permission to drive Milos's vehicle. Gronke's argument is very simple. The following facts in the record lean heavily in favor of Elector having implied permission. One, the disputed testimony and uncertainty of whether Milos objected to Elector driving the vehicle. Two, Milos leaving the keys where anyone can grab them. Three, Athena repeatedly denied Milos's offer to drive the Lexus and Milos brought the car over anyway. Four, Michelle drove Milos home instead of Milos driving his Lexus home. A reasonable conclusion can be made that Milos was trying to impress and or win over his new girlfriend's daughters. And six, Athena, Michelle, Milton's testimony that the Lexus was available for both Athena and Elector to use. The fact that Athena and Michelle testified that Milos offered to bring the car over because Athena and Elector were fighting over a vehicle. Milos's conduct indicates that he gave Elector implied permission to drive the vehicle. The fact that both Athena and Michelle, Milton, believed Milos provided the vehicle for both Athena and Elector, there is at minimum a genuine issue of material fact that Elector had implied permission. If Milos explicitly told Elector that she was not to drive the vehicle and Athena was the only attended user, why would Milos leave the keys and Lexus after Athena repeatedly told him that she didn't want anything to do with it instead of driving it home? Because Athena repeatedly refused Milos's offers, there would be no reason for Milos to leave the vehicle there unless Elector could also drive it. The record of testimony leads to the conclusion that the vehicle is for both Elector and Athena to use. The only undisputed facts in this matter support the fact that Elector had implied permission to drive the vehicle. On to the resident relative against progressive. Progressive's own policy declaration page names Elector as a driver and a resident relative. They even gave the family a premium discount for her, labeling her a distant student. That designation is not window dressing. It reflects Progressive's own intent to classify and charge a premium for Elector as a household member. That should preclude summary judgment and creates a triable issue of fact. Progressive wants the court to ignore this to only look at their internal definitions of insured or resident relative, but doing so would render the declarations meaningless. And Illinois law instructs courts to construe ambiguities in favor of coverage and against the drafter. But what was her status? What was the status of Electra at that time? It was uncertain. She was away, but would come back and she partially left. It's not clear in the record. And it's not clear in the record that she left. It's not clear in the record? Well, it's not clear as to if she intended on coming back or not. Mr. Esp, didn't Progressive adequately represent Larry's or Lawrence's interests? How do you mean? Well, if you're saying that Lawrence was needed to be added as a necessary party. Yes. You're saying that his interest needed to be added and that was one of the fourth. That was the fourth error that was at the trial level, correct?  So what do you think needed to be done if he was not added? What was necessary for him to have been added? What was not being done with him not being present as a party? I mean, he was the named insured under the policy. He was the stepfather, correct? Yes. And it was his policy. It was insured issued. The policy was issued to him. He was never named. He was the one who was, in fact, who filled out the policy. It was the information as to where the girls resided, which cars were listed, etc. I believe so. Okay. Thank you. Um, okay. Okay. So Progressive wants the court to ignore this and only look at their internal definitions of insured or resident relative. Clearly, Progressive intended to insure Electra as shown by the policy declarations page. Progressive calculated, applied, and collected premiums for Electra. The Matt V. Progressive case from Michigan, while not binding, is akin to the present matter, involved the same insurer, a nearly identical declarations page, and policy, and held that listing somebody as a resident relative on the declarations page defeats a denial of coverage. Progressive can discuss the definition of relative and whether it applies, but the fact is that Progressive declared that Electra was a resident relative and was paid by the insured under the assumption. And Progressive happily took those checks based on that assumption. Here, the record includes testimony suggesting Electra may have intended to return home, and at minimum, the declarations page creates a material issue of fact that precludes summary judgment. Your Honors, the trial court's summary judgment ruling rested on inadmissible evidence, ignored material factual disputes, contradicted the policy language drafted by Progressive, and proceeded without a necessary party. And any one of those errors would justify reversal. It is clear from the record that neither Pekin nor Progressive has met their burden to show that the policy exclusions apply free and clear from doubt. We respectfully request that this court reverse the granting of summary judgment and remand this matter for further proceedings. Thank you for your time. Any questions from the bench? No. Further questions? No, thank you. Okay. You'll have time in reply, Mr. Asp. Let's see. Who wishes to proceed first?  Or? I believe that Mr. Martin indicated he'd like to proceed. Oh, okay. Yeah. Okay. Thank you. You did read our ruling. Yes, Your Honor, I did. Okay, very good. Mr. Berglund, you may respond. May it please the court, Your Honor. Your Honor, it's Rich Berglund for the plaintiff, FLE, Pekin Insurance Company. First of all, I would like to apologize for filing the motion for a division of time late. That was my fault. I had it drafted, and I just forgot to put it on file. So my apologies for violating the local rule. I don't have much time here, but I would like to say that Judge Anderson did not err in granting summary judgment in favor of Pekin Insurance Company. There are no material facts that are in dispute in this case. First of all, I would like to discuss briefly the nature of the omnibus provision. Counsel for Bronke has described it as an exclusion, which it is not. It's a provision in the who is an insured section of the policy, which it's not an exclusionary clause. It's just a clause that describes who's entitled to coverage as insured under the policy. I'm not going to dispute the fact that we have the burden of proof because we are the plaintiff, but I just kind of wanted to clear that up as an initial matter. Here, the issue clearly is whether Electra had permission to use the vehicle at the time of the accident. If she did, she's an insured. If she didn't, she's not. We have Milos Sopko, who's the owner of the vehicle, clearly and repeatedly testified that he specifically told Electra on the night of the accident that she couldn't use the vehicle. And there's nothing in the record really that actually refutes that testimony. But there's there's no nobody that says that they were there for that conversation. Nobody heard it. There's no testimony that anybody heard Milos tell Electra this. Counsel for Bronke tries to use that in his favor, obviously, which he should. But our argument is that the fact that there is no such testimony there and the only testimony is from Milos Sopko stating that he told Electra that she couldn't drive the vehicle clearly and unequivocally shows that she did not have permission to use it. With respect to the Dead Man's Act, I think that Justice Bertani and Davenport hit the nail on the head. Milos Sopko is just a witness here. He's not a party. He has no direct interest in this matter whatsoever. This is not like Plow. It's not a subrogation case. Pekin's not trying to get back Sopko's deductible. He's just merely a witness. And again, his company was involved in the underlying action, but they were out on summary judgment. So he doesn't even have that interest here anymore. He would be in a directly interested party, I think, in the absence of the summary judgment. I mean, possibly. But Pekin was covering him against that claim anyway. It wasn't as if he wasn't being covered. It was a negligent entrustment claim. It's 100% covered. But that, it's also, I mean, okay, go ahead. Mr. Bergen, since time is at issue here, let me draw your attention to another issue, which is hearsay, okay? And whether hearsay, inadmissible hearsay. So we have excited utterance versus state of mind exception, okay? So let's talk about Detective Allen's statements, okay? The testimony. So we're talking about those two issues, whether it is inadmissible hearsay and Michelle's testimony, okay? So the deposition. In your brief, you mentioned five times that there was, the police detective interviewed her. And you say that he interviewed her at the hospital. And you mentioned that in your brief that it was done at the hospital five times. But where in the detective's deposition does it ever say that it actually interviewed her at the hospital? Because it doesn't ever say that. And it becomes important for purposes of state of mind and as an excited utterance. Let's start with excited utterance, okay? Because I can't find it in the record that it ever was at the hospital. And that would then defeat excited utterance. And then we take it to state of mind exception. A state of mind exception, it doesn't work as a state of mind exception. So you want to talk about that as a basis for this to be inadmissible hearsay then, which means that statement doesn't come in. Let's talk about that. Sure, yeah, sure. I will talk about that. And if it's not in his deposition testimony, I believe you've probably read it. And I believe that I got that from the police report, which is where I was reading it, which is where I believe that I got the information that he took the statement. That obviously is not in the record. The court cannot consider anything that's not in the record. I understand that. I've done plenty of appeals. So if that's your honor's position that excited utterance does not apply because there's no testimony that he was at the hospital. I understand that. But I think I would still disagree with it to a certain extent, because I do believe that this was a statement that she made in response to receiving information that she was not expecting. And it related to the death of her daughter, which had occurred as a very traumatic event. And clearly, you know, she's emotional at the time. And she's probably trying to figure out just like any mother would what happened. And when the detective tells her that she was driving a vehicle that, you know, her mother wasn't expecting her to be driving. I think that that does fit within the exception of excited utterance, whether it was at the hospital or not. And with respect to the then existing mental, emotional or physical condition, again, that's 8033. It's a statement of a declarant, a declarant, then existing state of mind, emotion, sensation or physical condition. Again, I think it's a it's a statement of her existing state of mind. And she was surprised at getting that information. From the permissive. So permissiveness was is actually or was actually a disputed fact, correct? Whether she was, whether the child was a permissive driver was a no, no, no, there's no dispute because the owner of the vehicle testified that he did not allow her to drive the vehicle. I mean, then you're giving you're saying that you're asking the court to make me lotion more credible witness than anyone else. Absolutely not. There's there's no testimony that actually refutes his testimony that he explicitly told her that she could not operate the vehicle. And then it goes back to the dead man. OK, correct. We don't even need Detective Allen's testimony. I mean, all it is, it's just it's corroboration in response to Gronke, you know, stating that we that that we don't have anything to support me. You know, testimony, we disagree with that. But we believe that even if Detective Allen's testimony is excluded because it's an admissible hearsay, Sopko's is not. And it's directly on point. And there's nothing really to refute it in your time. Time is up, Mr Bergman. Thank you, Your Honor. We'd ask you from the judgment in favor of Pagan. Thank you. Thank you. Counsel Goins? Yes, Your Honor. Good morning. Good morning, Your Honors. Good morning, Counsel. I will also forward my apology to the court for the late submission of splitting of time. Mr. Bergman and I worked together to get the motion together. So I'll keep it brief and give my apologies to the court. I will not belabor the points already raised, primarily standing on our brief. I will add on to the Dead Man's Act that the issue was not raised before the circuit court. Therefore, the record is not sufficient for Your Honors to make a decision concerning that point. The record's incomplete on that matter. Going further to Mr. Esf's argument, whether Electra is considered a resident relative, listed driver, or distant student, the exclusionary language in the policy states that there is no coverage for bodily injury if she was operating a non-owned vehicle without permission. As Mr. Bergman indicated, I believe that the testimony is undisputed that Electra did not have permission to drive Mr. Sopko's Lexus. Further to that point, Mr. Gronke's undisputed testimony in his deposition, he stated clearly there was no permission asked to take the Lexus that evening. They just went ahead and took it for a joy ride, was his testimony. So I think to that end, regardless of how you classify Electra, there was no express permission for her to be driving the vehicle on the night of the accident. Therefore, the burden is met. The language of the policy, the exclusionary language, is clear. There is no coverage for bodily injury for her operating a non-owned vehicle without permission. And going further to Mr. Counsel's argument and Gronke's argument that Larry Rydzewski is a necessary or indispensable party to this action, I believe that the case cited by Appellant is not persuasive in our jurisdiction. The closest companion case that I came across was Safeco Insurance Company v. Trinus at 238 Bill F. 3rd, 541. It was the first district case from 1992. In that case, and the underlying action, the insured and permissive user were defaulted. Safeco then brought the declaratory judgment action. They did name the insured and the permissive user. However, neither party was served. And considering whether the named insured and the permissive user were necessary parties, the appellate court indicated that there are three factors to consider. The first being, would the interest of the unnamed individual be materially affected by a judgment in that individual's absence? The second criterion, would that individual's presence be needed to reach a decision that protects those before the court? The third criterion being, would the individual's presence as a named party enable the court to make a complete determination of the controversy? I would argue in this case, Mr. Brzezinski's interest would not be materially affected by not being a named party to the declaratory judgment action. He's not bound by the decision of the circuit court. As to the second prong, his presence was not needed as a named party to the declaratory judgment action. Mr. Gronke was able to represent his own interests and was not prejudiced by Mr. Brzezinski not being a named party. And the court was able to make a complete decision of the controversy without Mr. Brzezinski's presence as a named party. And that is the totality of my argument. And Larry was not a named party in the underlying suit either, was he? No, he was not, which begs the question for me, Your Honor. If he's an indispensable and necessary party to the declaratory judgment action, is he not in the underlying action? To distinguish it from the case cited by the appellant, Safeway v. Harvey, where the unserved individual was a direct defendant in the underlying tort suit? Correct. Thank you. Any further questions from the court?  Okay, thank you, Counsel Goynes. Thank you. Mr. Resch, you may reply. I just have a few points that I want to belabor, all the facts in the record and what I previously said. Um, in terms of if Detective Allen's testimony is admissible, he contradicts everything that he earlier said, which none of the Pekin or Progressive talk about. This is a direct question and answer from his deposition.  Did she, Michelle, tell you that Electra had been told she could not drive the car? She, Michelle, she didn't say that Electra couldn't drive the car, as I said, that she was just surprised that that was the vehicle she was driving. And he kind of talks, Counsel for Pekin talked about how there's no dispute as to whether Electra had permission to drive the vehicle. There's ample testimony from Athena, Michelle, and Milton that the vehicle was available for everybody to use. In addition, I think they conflate express permission with implied permission. All of Milos' conduct points to the fact that it was for both of them to use, and at minimum, creates a genuine issue of material fact that would render this granting of summary judgment reversible. And I think it's difficult because the order that the court entered basically just said, you know, that they're not expressing, Electra wasn't a permissive driver motion for summary judgment granted. But with that being said, Grunke asked that this course reverse the granting of motion for summary judgment in favor of both Pekin and Progressive. What are you looking at in the record for implied permission? I think, so I went over it, but he leaves the keys there, and that's not in and of itself something that would denote implied permission. But the disputed testimony on whether he actually explicitly said that she cannot drive, she, Electra, cannot drive the vehicle. And the further, I think the biggest thing is that Athena repeatedly denied Milos' offer to drive the Lexus. Athena didn't really approve of their relationship. Michelle was married at the time and having an extramarital relationship. And she said she didn't really like him, something to that effect. And so his repeated or her repeated denials, both before he brought the car and after he brought the car, there's no reason for him to leave that vehicle there if it's not for both of them to drive. And again, a reasonable conclusion that Milos is trying to, like he's got this nice, shiny luxury vehicle that he wants to try to impress both his new girlfriend and his, her kids. I think all leads to the reasonable conclusion that he wouldn't, any reasonable person would not leave their car there if it was only for Athena. He explicitly did not want Electra to use the vehicle. Okay, thank you. Any questions from the court? Further questions? No. I have none. Okay. Well, thank you, counsel, both for your fine argument this morning in this matter. The score will be taking this matter under consideration. The written disposition shall issue.